Thank you, Your Honors. Good morning. May it please the Court, my name is Nancy Talner, and I'm representing Appellant Roberto Mendez-Sanchez. I would like to reserve three minutes for rebuttal. There's three issues raised in the briefs, but I'm only going to discuss one of them today in the main argument, and that is the second one, and the issue there was whether the numerous examples of erratic, irrational behavior and paranoid thinking displayed by Mr. Mendez-Sanchez in the record should have led the Court to have a doubt about his competency and request an evaluation. Well, Counsel, Judge Peckman asked the lawyers, all three of them who had represented him and spent many hours with him, whether any of them had any questions with regard to his mental capacity, and all of them indicated that they did not have those concerns. So what is it beyond the fact that he was obviously reluctant, recalcitrant, if you will, wanting to sort of disassociate himself from the proceedings because he didn't want to hear bad news, would lead the District Court to believe that she should order a 42-44 evaluation? Certainly. I think that the problem with the attorneys, they didn't quite say we have no concerns. I mean, actually what several of them said is we're not mental health experts, but it seems okay to us. We're not saying there's a mental health problem. We're dealing with very experienced counsel here. I know them all, and they've had extensive experience representing criminal defendants, death penalty defendants, people where you really need to be attuned to those sorts of issues, and none of them said, I think we need to get this guy evaluated. Why can't Judge Peckman rely on that as well? She knows the lawyers better than I do. True, and certainly there's no doubt about the experience of the attorneys here, but I think that the cases specifically address that question and say that just because an attorney doesn't raise a question about a client's competence, that isn't dispositive. What the legal test is under all the cases is there's actually three parts to that test, and two of them are the defendant's demeanor and the defendant's irrational behavior. And I think on those two factors, this record is very strong. Specifically, would you cite us to show irrational behavior that should have triggered a competency evaluation? Your Honor, I think it's the cumulative effect. It's no single one thing. Lawyers love to argue cumulative errors. Let's start with error one. Tell me what that was. Well, I think that the fact that he kept saying that his attorneys, when his attorneys would try and talk with him and tell him what the evidence in the case was, what the guilty plea offer was, and all of those points, he would say, they're threatening me. And not just that he didn't like what they were hearing, and as the Court said, not just indicating recalcitrance, but really to the level of raising a question about whether he had some underlying mental issue with his understanding. Was it an underlying mental issue or was he listening to the other convicts at the Federal Detention Center at CTAC who were giving him legal advice that we think you can get a better plea offer than what the government's offering? Well, I think, I mean, I think at one point one of the attorneys said that. But that's, you know, certainly people listen to the other inmates all the time. But the question why there's a reasonable doubt, a bona fide doubt about competency in this case, is that Mr. Mendez-Sanchez seemed to have tremendous confusion about that. I mean, people would tell him things and then he would. Or he just wanted something better than 10 years, which was the best the government was going to offer the kingpin in the case. At the same time as he kept saying he wanted better than 10 years, within minutes of saying that he would say, well, judge, just give me 30 years. Just give me 30 years and I'll sign off on it. And so that was part of the record that adds up to this cumulative raising a doubt about competency was these wild swings in beliefs, you know, from one minute to the next on the same day's hearings. Not just being a difficult client. Like the Miles case is one example that's cited in the briefs of someone who was a tax protester. But otherwise, you know, was able to follow things, was able to represent himself. In contrast in this case, there really was a lot of expression of confusion, of lack of understanding, of wild swings from I'm not going to come to court, oh, okay, now I am. I'm not going to wear my. Did defense counsel offer any kind of medical or psychiatric testimony in defense to the charges at the trial to try to convince the jury that he couldn't form the capacity to intend to commit the violation? They didn't offer that. And they did not offer any medical evidence. Certainly, you know, one of the problems in this case that we're left with is that there isn't any medical evidence as to mental disability or defect. Again, going back to the colloquy between the court and defense counsel, if three different and competent defense lawyers didn't see a reason to ask for funds to have their client evaluated and didn't select to offer that kind of testimony in defense, what is it that the district court was supposed to have seen that three good lawyers didn't? Well, and Your Honor, I think that another important point is that they were three good lawyers trying to deal with a difficult situation, difficult client. And I think it's certainly possible from their perspective that one of the big issues their client was expressing was a lack of trust in them. And they may have felt that if they had started trying to question the client's mental health, that that might have made things worse. So I think, you know, from the point of being good, experienced attorneys, they may have had that very difficult dilemma to face. But we do have, do we not, a fairly extensive colloquy between the court and your client and the court and defense counsel exploring the nature of the relationship between lawyers and client. I mean, I thought Judge Peckman did a pretty admirable job of following our case law to determine whether there was animosity between counsel. And she made specific findings that there was not animosity, that there was nothing that was interfering with the ability of the lawyers to represent the client. Again, in the face of those factual findings, what is it that the district court should have seen that nobody else saw? Well, I mean, and we certainly agree that there was extensive colloquy. I think the problem in this case is that the colloquies, every time there was a colloquy, there was more evidence brought out about why there might be a doubt about the defendant's competency. I mean, when the court was trying to question him about the conflict with his attorneys, she would ask a question about that, and he would start talking about something entirely different, something about when he was first arrested and how the police started treating him. She would try and bring him back to focus. Again, he would go off on a different tangent. And, you know, another part of this cumulative effect that raised a doubt was things like that, where his ability to focus seemed to be impaired. And I think that raised a question about, you know, what was going on with this? Did we need some sort of medical input to figure out whether that was some underlying mental problem that related to competency, or you could rule that out and then just say, well, you just don't like the situation you're in. But given what we've got in this record, it's impossible to reconcile, to erase that question. And that's why we submit those. You know, you're just under two minutes. Why don't we hear from the government, and then we'll make sure you get a chance to respond. Thank you. Thank you. May it please the Court, my name is Matthew Diggs, and I represent the United States in this appeal. As appellant counsel has limited her argument to the competency question, I'll focus my argument on that as well. As Judge Tolman recognized, in this case, each lawyer was explicitly asked about the defendant's competence. This is not a case where the lawyer could have raised the issue of defendant's competence and chose not to, but rather Judge Peckman explicitly asked all three of defense counsel's lawyers, and none of those lawyers raised a question about the defendant's competence. And we're talking about competence to stand trial or competence in some other broader sense? What kind of competence are we talking about? Competence to stand trial, Your Honor. Yeah, that's a pretty difficult standard for a defendant to meet. It is. It is a difficult standard, and when you take a look at the record here, and you take a look at the factors that this Court has considered, has looked to, in determining a defendant's competence, the record here is clear that this defendant, or in fact that Judge Peckman's decision not to order a competency hearing sua sponte, was not plain error. You have to say, it's pretty clear from the record that he had absolutely no sense of his own best interest. He made some odd decisions, Your Honor. The government will concede that. But odd decisions, a decision not to accept a plea offer that may have been in the defendant's best interest, does not meet the Court's standard for incompetence, particularly where all three counsels who were questioned did not raise a concern. As this Court recognized, there's no medical information in the record. There's no psychological evaluation. The pre-sentence report, of course, that Judge Peckman did not have access to, this was after the convictions, raised no issue with regard to mental competence. Another factor that the Court looks to is demeanor in the court. I'd appreciate it if you didn't limit your argument solely to competency, because although counsel for the appellant only argued that, in the briefs, the appellant also raises the issues about not permitting a change of a lawyer shortly before trial, and also not letting him represent himself. And the colloquy on the Faretto waiver was unusual, because it seemed to me like he was leading to expressing his desire to represent himself. But when he got the final question, he kind of said, well, I'd like a lawyer if it's a different lawyer. That's the substance, I think, of what he said. So it seemed equivocal in terms of representing himself, but it's clear he wanted a change of lawyer. So I'd like you to at least address that issue. Certainly, Your Honor. With regard to the Faretto colloquy, counsel would agree that the defendant's desire to waive counsel and represent himself was equivocal. The last question posed by Judge Peckman was, so let me understand you would prefer to have a lawyer you do not want to represent yourself. Defendant's response, yeah, I think it would be better if a lawyer will help me, but a good lawyer, not like these guys. So Judge Peckman is left with the situation where she is denied, as the government would argue rightfully so, the defendant's motion for substitution of counsel, and she does not have an unequivocal waiver of that right to counsel. From that point on, when Judge Peckman found the waiver to be equivocal or did not find an unequivocal waiver, the defendant worked with counsel throughout trial. They communicated, and the issue to represent himself was not brought up again. I think the best way to explain defendant's desire to represent himself was really a frustration at his inability to get a continuance. Frustration with his inability to have substitute counsel appointed that spills over into, well, maybe I can represent myself, but as a result of the Faretto inquiry, I think really the defendant comes to the conclusion that that is not in his best interest. And that's the only option that he has since he won't be entitled to substitute counsel. I will touch on the... But if Judge Peckman has made it clear that he's not getting a different counsel, I mean, here's your lawyer. I'm satisfied that this lawyer is going to be your lawyer. And he then says, well, in that case, I want to represent myself. He says, not that I want to represent myself sort of in the abstract, but the choice you give me is between this lawyer and representing myself. What then? Because I think that may be how I should interpret what he said. Well, the colloquy, at least as I understood it, it almost reached that point. But when the judge asked him did he want to represent himself, having heard about the negatives, he said, it would be better if I had a lawyer, but just not these lawyers. Right? Isn't that... Yes. Yes. I think the Smith case before this court at 282 F. 3rd, 763, talks about the fact that a request for a substitution of counsel is not a request to go to proceed pro se. And that, the request to proceed pro se, is the request that needs to be explicit and unequivocal. And Judge Peckman, in this case, not clearly error in finding that there hadn't been that. That colloquy, did he ever say to follow on Judge Fletcher's? Did he ever say, if I can't change counsel, I want to represent myself? No, Your Honor. He wasn't posed that particular question, but Judge Peckman did make it clear that he wasn't going to be receiving new counsel. And Mr. Mendez-Sanchez's response was, yeah, well, I recognize that it would be better if I went with a lawyer. Just not these guys. Just not these guys. But I think this issue, this pro se colloquy, needs to be considered in the context of the substitution colloquy that has just occurred at the same hearing right before it. During that colloquy, it was clear to Judge Peckman that the defendant really wanted a continuance, really wanted a better plea offer, and was simply frustrated that neither of those were going to occur. I think it's a fair assumption on her part, on Judge Peckman's part, that those frustrations spilled over into the short-lived desire of the defendant to explore the possibility of pro se representation. You know, the government lawyer at the Feretta Colloquy, pretty much as I read it, said to the judge that if he wants to do that with his eyes open, he has an absolute right to self-representation. And after that, she asked him sort of point blank. She gave him a little lecture about how it would be negative or harmful to him to represent himself, but then asked him, did he want to do it? And that's when he gave these answers that more or less said, it would be better for me to have a lawyer, but a different lawyer. So is there any precedent that you're aware of that deals with that kind of exact kind of colloquy? Where someone says, yeah, I should have a lawyer, but not these guys? The precedent I am aware of, which was raised in the appellant's brief, which is out of the Ninth Circuit, or excuse me, the Eleventh Circuit, the Gary case deals with the situation where a defendant, as the court puts it, involuntarily represents himself because he unequivocally does not want to go with the only lawyers the court is allowing him. So he continues to say, after significant questioning by the district judge, that he's going to involuntarily represent himself. He's very clear on that point. But the difference in Gary is that the court found that that statement, to involuntarily represent oneself, could be an unequivocal waiver of counsel. Here, we don't have that same unequivocal waiver of counsel. And the Gary court was very clear. It stated that district courts are not bound to interpret the uncooperative behavior of every defendant as a waiver of right to counsel, nor would a court err by requiring a clear statement of an intent to proceed pro se. And that's what we did not have here. Seeing that my time is almost up, I would ask the court to affirm the convictions of the defendant. Thank you. Thank you. Yes, Your Honors. Could you address, in your rebuttal, whether you think that the district court's colloquy was conducted properly on Feretta? Yes, Your Honor. I think that it was very good at the beginning, and I think it covered most of the issues, but I also think in the end it missed an important issue, and that was the subject that the court was just raising with the U.S. attorney, and that being what was the interplay between the defendant's request to represent himself and his motion for substitution of counsel, and the other concerns that he had expressed. Clearly, I think all three of these issues that we've raised in the briefs are related, and I think very specifically the issue of the motion for substitute counsel and the Feretta inquiry were interrelated. And certainly the record gives us information about all of those things, and I think that the point that we make in our brief, as far as the Feretta inquiry being inadequate, is there is the option of standby counsel, and that option just wasn't really discussed. And I think if it had been, we might have more. I thought that the precedent indicates that there's no constitutional right to standby counsel. That's correct, Your Honor, but the cases do say there's no right to that, but they also say it's an option. It's a valid option for a court to consider. But how can it be reversible error if there's no constitutional right? The mere fact that the district court didn't afford him a non-constitutional right does not provide a basis to reverse this conviction under Feretta, does it? Well, I think the answer to that is it's part of the consideration of the atticus we have in the colloquy, as the judge was mentioning, that if there is this other option that might help resolve this issue, resolve the dilemma about self-representation or substitute counsel, if that option had been discussed as part of the colloquy, then I think we would have a clearer record as to whether the defendant really was choosing not to assert self-representation or had some sort of confusion about what was going on. But if there's no constitutional right, then, to the extent that you would characterize that as a Hobson's choice, his choice is clear under the law. Either he stands alone or he stands with a lawyer. There is no middle ground as far as the Sixth Amendment is concerned. Well, I think the Gary case from the Eleventh Circuit does raise a question of another option, and that is that in a case like this with a record like this, if the defendant is saying, I want a different lawyer, or maybe I want to represent myself, that the court does have this third option of saying, okay, by your taking that position, you have triggered a self-representation, then the question becomes, should it be self-representation with or without standby? I think certainly given the defendant's answers in the colloquy here, that standby should be considered. It would be hard for me to see that the court could have said he unequivocally asked for self-representation given the answers that he gave her. You know, she gave him every chance and she went back. And I think standby counsel, someone put that on the table. Maybe it was the government's lawyer in that colloquy said they could consider a standby counsel. But if he doesn't have a right to that, then what's Judge Beckman supposed to do? Tell him you have no right to standby counsel? I may or may not give you one? No, I mean, I understand it's, again, a dilemma, but I also think that the defendant was certainly indicating that he had some ideas about the case. He had ideas about issues he wanted to raise, ideas about needing more time to prepare, and certainly ideas about not getting along with his current attorneys. And I think that from where he was coming from, that's what prompted both the motion for substitution and then the questions about self-representation. And if there had been more exploration, I mean, I understand it's a difficult concept. There is an option of standby counsel, but it's not required. But again, if there had been an exploration by the judge of that concept, it might have helped the defendant understand, well, if I have something I really want to say, maybe there is this other way I could do it, and maybe that's the one I want. Okay. Thank you. Thank both sides for your helpful argument. The case of the United States v. Mendoza-Sanchez is now submitted for decision.
judges: Fletcher, Gould, Tallman